[No. A106345. First Dist., Div. Four. May 5, 2005.]

AMPEX CORPORATION et al., Plaintiffs and Respondents, v.
SCOTT CARGLE, Defendant and Appellant.

1570

1572

COUNSEL

Jennifer Stisa Granick for Defendant and Appellant.

Morison-Knox, Holden Melendez & Prough, William C. Morison-Knox, Michael D. Prough and Karen G. Levy for Plaintiffs and Respondents.

## OPINION

**REARDON, J.**—Respondents—a publicly traded company and its chairman—brought a defamation action against an anonymous poster on an Internet message board who posted messages critical of them. The poster responded with a motion to strike the complaint under California's anti-SLAPP statute.[1] Once the poster's identity was revealed, respondents dismissed the California action and filed in New York. In the first appeal, we held that the dismissal did not strip the trial court of jurisdiction to rule on the motion and request for attorney fees. (*Ampex Corp. v. Cargle* (Apr. 30, 2003, A099344) [nonpub. opn.].) This time around we reverse the lower court's denial of appellant's motion for attorney fees and conclude that he sustained his burdens under section 425.16. Therefore, appellant is the prevailing party, entitled to attorney fees. (§ 425.16, subd. (c).)

## I. BACKGROUND

### A. *Factual Background*

Appellant Scott Cargle is a former employee of iNEXTV, a wholly owned subsidiary of respondent Ampex Corporation (Ampex). Cargle was laid off in December 2000 for economic reasons, along with approximately 20 other iNEXTV employees.

Ampex is a publicly traded company with 59.9 million shares outstanding as of April 2002. Respondent Edward J. Bramson is the president and chairman of the board of directors of Ampex. We take judicial notice that Ampex maintains a Web site at www.ampex.com. Among other things, the company posts its Securities and Exchange Commission filings on this Web site. Press releases and letters from the chairman are also available through the Web site.[2]

---

[1] Code of Civil Procedure section 425.16 (§ 425.16). SLAPP stands for strategic lawsuits against public participation.

[2] Ampex is adamant that this and other computer records which were attached to the declaration of Cargle's attorney are not available to him because such evidence was rendered

In August 2001, Cargle, under the username "exampex" (Exampex), posted messages on the Internet message board for Ampex operated by Yahoo! We take judicial notice that Yahoo! offers financial message boards on the Internet for publicly traded companies where any user can post comments. (See *Dendrite Intern. v. Doe No. 3* (2001) 342 N.J. Super. 134 [775 A.2d 756, 761–762].)

Message No. 112255, posted by Exampex, read in part: "Well, let me tell you something. I was an employee with INEXTV for a while. Guess what? They did market research AFTER we launched the websites, not before. They spent millions before they even looked for a market. Then the geniuses got about 10 people in a room and asked questions like, 'How would you like to see exciting videos on your computer that will help you make millions of dollars and become fabulously famous?' . . . [¶] I just wonder how the crooks fooled everyone for so long. The websites rarely worked. The content was so boring and stale that no one even noticed we existed. The production values sucked because the equipment was cheap (my son has better TV equipment at his high school) and the majority of the production staff were interns. . . . [¶] All in all, it was the most miserable, sleazy, cheap operation I have ever worked for. . . . The production department bought studio equipment that couldn't be used (because it was bought on the gray market somewhere and all the operating manuals were in FRENCH, for crying out loud! No one could read them!) During a shoot one day, the VP of Programming stole a Razor scooter from the company who was marketing the toy (he has triplets and tried to steal three—how cheap is that?)."

The next day Exampex posted message No. 112281 under the header "all is true." It read in part: "I can't prove I worked for them without posting a check stub and I'm not that stupid. [¶] I will tell you that Ed said people who smoke marijuana should be taken out and shot; and upon hearing a single mother had contracted AIDS, he said, 'Serves her right.' So not only is he incompetent, he's cruel." The final message, No. 112299, under "Re: all is true," contained the following: "I just thought after all this speculation about what happened, it might be interesting to hear from someone who saw.

inadmissible on hearsay and authentication grounds by the trial court in the original proceeding. Inexplicably, Cargle did not challenge this ruling in the first appeal, nor did he press the matter in the trial court following our reversal. The trial court's initial rulings were patently wrong. The various computer printouts from Ampex's Web site and the Yahoo! message board were offered to show that they existed in the public eye: They were not offered for the truth of the matter asserted and thus were not hearsay statements. (Evid. Code, § 1200.) Moreover, the records were self-authenticating as computer printouts. (*Id.*, § 1552, subd. (a).) However, because Cargle has not properly preserved his challenge to the evidentiary ruling, we do not disturb it. Nevertheless, to the extent the relevant excluded records "are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy" (Evid. Code, § 452, subd. (h)), we take judicial notice of them (*id.*, § 459, subd. (a)).

[¶] It was total incompetence. It was a bunch of old guys sitting around trying to make money with a new media that they didn't understand."

B. *Procedural History*

Respondents Bramson and Ampex filed a libel suit against "Doe 1 aka 'exampex' on Yahoo!" in California. The gist of the complaint was that Exampex posted defamatory messages about Ampex on the Yahoo! message board for that company. Cargle filed a section 425.16[3] anti-SLAPP motion, coupled with a request for attorney fees and costs.

Upon learning Cargle's identity in the proceedings, respondents dismissed their complaint. At the subsequent hearing on the motion to strike and for attorney fees, the court ruled that the voluntary dismissal aborted its jurisdiction to consider the motion. Thus the court made no determination as to whether Cargle was the prevailing party entitled to section 425.16 attorney fees. Cargle appealed the order and we reversed. On remand, the trial court denied Cargle's motion to strike and for attorney fees, determining that had the lawsuit not been dismissed, it would have denied the motion on the merits: "Even assuming, *arguendo*, that Defendant's challenged statements were made 'in connection with a public issue or an issue of public interest' within the scope and meaning of Section 425.16(e), Plaintiffs have demonstrated a probability they will prevail on their claims sufficient to defeat the motion to strike. . . . [¶] Plaintiffs have established each element of libel per se. [¶] Plaintiffs are not required to show actual damages as there is evidence from which constitutional malice may reasonably be inferred." This appeal followed.

## II. DISCUSSION

A. *Introduction; Burdens of Proof*

█ Section 425.16 applies to causes of action arising from an act "in furtherance of the person's right of petition or free speech" under the federal or state Constitution "in connection with a public issue." (§ 425.16, subd. (b).) Such acts include "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest . . . ." (*Id.*, subd. (e)(3).) Claims based on these acts are subject to a special motion to strike unless the court determines that the plaintiff has

---

[3] This statute provides in part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

established that there is a probability of prevailing on the merits. (*Id.*, subd. (b)(1).) We construe section 425.16 broadly in order to encourage participation in matters of public significance. (*Id.*, subd. (a).)

■ Section 425.16 thus invites a two-part analysis: First, did the challenged cause of action arise from protected activity within the meaning of the statute? The moving defendant bears this threshold burden. Second, if the defendant makes the threshold showing, the burden shifts to the plaintiff to make a prima facie showing of facts which, if credited by the trier of fact, would sustain a favorable judgment. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 [113 Cal.Rptr.2d 625].) In opposing an anti-SLAPP motion, the plaintiff cannot rely on allegations in the complaint, but must bring forth evidence that would be admissible at trial. (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 [12 Cal.Rptr.3d 786].) We do not weigh credibility or evaluate the weight of the evidence. Rather, we accept as true the evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it has defeated plaintiff's submission as a matter of law. (*Ibid.*)

B. *Cargle Has Met His Burden*

■ When Cargle decided in August 2001 to join the conversation about the fortunes of Ampex, he did so by posting messages on the Yahoo! message board for Ampex. The question here is whether such postings were made in a public forum, traditionally defined as " 'a place that is open to the public where information is freely exchanged.' " (*ComputerXpress, Inc. v. Jackson, supra,* 93 Cal.App.4th at p. 1006.) The term "public forum" includes forms of public communication other than those occurring in a physical setting. Thus the electronic communication media may constitute public forums. Web sites that are accessible free of charge to any member of the public where members of the public may read the views and information posted, and post their own opinions, meet the definition of a public forum for purposes of section 425.16. (*ComputerXpress, Inc. v. Jackson, supra,* at p. 1007.) Thus the Yahoo! message board maintained for Ampex was a public forum.

■ But were Cargle's postings made in connection with a matter of public interest? Contrary to Ampex's assertions, they were. Courts have held that Internet postings about corporate activity constitute an issue of public importance upon considering the following pertinent factors: (1) whether the company is publicly traded; (2) the number of investors; and (3) whether the company has promoted itself by means of numerous press releases. (See *Global Telemedia Intern., Inc. v. Doe 1* (C.D.Cal. 2001) 132 F.Supp.2d 1261, 1265; *ComputerXpress, Inc. v. Jackson, supra,* 93 Cal.App.4th at pp. 1007–1008.)

Ampex is a publicly traded company, with over 59 million shares outstanding at the relevant times. Ampex inserted itself into the public area via press releases issued by the company and made available on the Internet. A July 20, 2001 press release of Ampex announced it was discontinuing the operations of iNEXTV. By the time of Cargle's first posting, the Yahoo! board dedicated to Ampex had generated over 112,000 postings—Exampex's message was No. 112255—another indicia of public interest in the company. Cargle's speech addressed the management practices of iNEXTV and its chairman. Exampex's message itself indicates he was prompted by public speculation about iNEXTV: "I just thought after all this speculation about what happened, it might be interesting to hear from someone who saw."

C. *Ampex Did Not Demonstrate a Probability of Prevailing on the Merits*

    *Limited Public Figure*

██ Since public figures must prove by clear and convincing evidence that an allegedly defamatory statement was made with knowledge of falsity or reckless disregard for truth (*New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 279–280 [11 L.Ed.2d 686, 84 S.Ct. 710]), we must first discern whether respondents were public figures. ██ The characterization of "public figure" falls into two categories: the all-purpose public figure, and the limited purpose or "vortex" public figure. The all-purpose public figure is one who has achieved such pervasive fame or notoriety that he or she becomes a public figure for all purposes and contexts. The limited purpose public figure is an individual who voluntarily injects him or herself or is drawn into a specific public controversy, thereby becoming a public figure on a limited range of issues. (*Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 351 [41 L.Ed.2d 789, 94 S.Ct. 2997]; *Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 253 [208 Cal.Rptr. 137, 690 P.2d 610].)

██ *Copp v. Paxton* (1996) 45 Cal.App.4th 829, 845–846 [52 Cal.Rptr.2d 831] sets forth the elements that must be present in order to characterize a plaintiff as a limited purpose public figure. First, there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants. Second, the plaintiff must have undertaken some voluntary act through which he or she sought to influence resolution of the public issue. In this regard it is sufficient that the plaintiff attempts to thrust him or herself into the public eye. And finally, the alleged defamation must be germane to the plaintiff's participation in the controversy.

Respondents are adamant there is no public controversy, arguing that the Exampex postings spoke to the internal workings of Ampex, which were not

subject to controversy, whether public or private. We disagree. Respondents' depiction does not account for the public dimension of the exchanges. First, prior to Exampex's comments there were a number of postings on the Yahoo! message board criticizing the management of Ampex and Bramson. The Yahoo! message board itself is a public forum. Second, the content of Exampex's messages posted on the Internet over a three-day period indicates that each message responded to another poster's message, with over 40 postings occurring in between. Third, with 59,000 shares outstanding, the causes and consequences of discontinuing Ampex's multimillion-dollar venture into the Internet television business had foreseeable and substantial ramifications for nonparticipants. All this goes to underscore the public nature of the matter. Ampex's decision and action in discontinuing iNEXTV amounted to a public controversy that elicited concerns about the management of Ampex.

Although respondents deny inserting themselves into the controversy, they did, by way of press releases and letters posted on their Web site. For example, Ampex's July 2001 press release announcing the discontinuance of iNEXTV attributed its decision to "adverse capital market conditions." As well, Chairman Bramson's 2000 annual letter, also posted on the Ampex Web site, touted the significance of iNEXTV to Ampex's success.

Finally, Cargle's comments were germane to respondents' participation in the controversy. These comments were counter to respondents' version of events. They criticized management rather than ascribing iNEXTV's woes to market forces.

D. *Malice*

Cargle argues that his speech was nonactionable opinion, hyperbole and rhetoric rather than actionable false statements of fact, and we agree that some of the offending speech was just that. However, we are not convinced that all of his speech can be classified as opinion and thus we must determine whether respondents can demonstrate that some of the alleged defamatory speech was uttered with actual malice.

In the context of an anti-SLAPP suit, courts must consider the pertinent burden of proof in ascertaining whether the plaintiff has shown a probability of prevailing. (*Annette F. v. Sharon S.* (2004) 119 Cal.App.4th 1146, 1166 [15 Cal.Rptr.3d 100].) Thus, limited purpose public figures such as respondents who sue for defamation must establish a probability that they can produce clear and convincing evidence that the allegedly defamatory statements were made with knowledge of their falsity or with reckless disregard of their truth or falsity. (*Id.* at p. 1167; see *New York Times Co. v.*

*Sullivan, supra,* 376 U.S. at pp. 279–280; *Copp v. Paxton, supra,* 45 Cal.App.4th at p. 846.) To meet the clear and convincing standard, the evidence must be such " 'as to command the unhesitating assent of every reasonable mind.' " (*Annette F. v. Sharon S., supra,* at p. 1167.)

The reckless disregard test requires a high degree of awareness of the probable falsity of the defendant's statement. " 'There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.' " (*Reader's Digest Assn. v. Superior Court, supra,* 37 Cal.3d at p. 256, quoting *St. Amant v. Thompson* (1968) 390 U.S. 727, 731 [20 L.Ed.2d 262, 88 S.Ct. 1323].) This is a subjective test, focused on the defendant's attitude toward the veracity of the published material, as opposed to his or her attitude toward the plaintiff. (*Reader's Digest Assn. v. Superior Court, supra,* at p. 257.)

Actual malice may be proved by circumstantial or direct evidence. (*Annette F. v. Sharon S., supra,* 119 Cal.App.4th at p. 1167.) However, we will not infer actual malice solely from evidence of ill will, personal spite or bad motive. (*Id.* at p. 1169.)

Respondents contend there is sufficient circumstantial evidence to infer malice. Specifically, they point out that the statements were posted after Cargle's employment with Ampex was terminated. Further, they posit that the tone and substance of the speech "are hallmarks of ill-will and vindictiveness" and that certain statements indicate Cargle was "angry, hostile and spiteful as to his former employer." Finally, they assert the speech was "completely untrue."

Respondents have not carried their burden. They rely on Cargle's status as a former employee which is not disputed. However, respondents offer nothing to counter Cargle's statement that he was laid off, with 20 others, for economic, not personal reasons. Where is the basis for inferring personal spite? Respondents also assert that Cargle described events and comments that never occurred. However, again, Cargle produced detailed declarations setting forth the basis for his statements and opinions. Respondents' declarations, simply summarizing certain comments and repeating that they were false, were insufficient to establish a prima facie showing of constitutional malice. In short, respondents have not produced any evidence or inferences from evidence concerning Cargle's attitude or a state of mind with respect to the veracity of the messages he posted on the Yahoo! message board.

## III.  DISPOSITION

We reverse the trial court's order denying Cargle's motion for section 425.16 attorney fees. Cargle was the prevailing defendant on his motion to strike and is therefore entitled to attorney fees and costs pursuant to section 425.16, subdivision (c). We remand solely for determination of reasonable fees and costs.

Kay, P. J., and Sepulveda, J., concurred.