Filed 12/11/14  Pham v. Lee CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RANDAL PHAM,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>JENNY LEE et al.,<br><br>　　Defendants and Appellants. | H039184<br>(Santa Clara County<br>Super. Ct. No. 1-12-CV-228332) |

Plaintiff Randal Pham, an ophthalmologist, filed a defamation action against defendants Jenny Lee and Alvin Lee (the Lees) for statements they made on the Internet accusing Dr. Pham of fraud, among other things.  The Lees moved to strike Dr. Pham's lawsuit under Code of Civil Procedure section 425.16, the anti-SLAPP statute (section 425.16).  The trial court denied the motion, and the Lees now appeal from the denial. (§ 425.16, subd. (i).)[1]

We conclude that because Dr. Pham has shown a probability of prevailing on the merits, the trial court did not err in denying the Lees' motion to strike.  Accordingly, we will affirm the judgment.

---

[1] All unspecified statutory references are to the Code of Civil Procedure.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Dr. Pham operates an ophthalmology clinic in San José.  His patients included Young Lee (the Lees' father) and Chinh Tri Truong (the Lees' grandmother).  The statements at issue arose in connection with Dr. Pham's treatment of Young Lee and Chinh Tri Truong.

## A. *The Complaint*

On July 12, 2012, Dr. Pham filed a complaint against the Lees in Santa Clara County Superior Court alleging a single cause of action—defamation.  The complaint alleged that the Lees posted "false, inaccurate, and/or defamatory" statements about Dr. Pham's business practices on various Web sites.  The complaint also alleged that the Lees knew or should have known the statements were false, and that they made the statements "with malice and intent to injure plaintiffs business and business reputation."  Dr. Pham attached three exhibits to the complaint, which appear to be printouts of the Lees' online reviews of Dr. Pham's business practices.

Exhibit A to the complaint is a printout of the profile page from the Web site Yelp.com (Yelp) for an individual identified as "Alvin 'chipmunk20' L."  The profile, which includes the individual's photograph, specifies his location as Davis, California, and his hometown as San José.  The profile includes a review for Dr. Pham posted on March 29, 2012, stating:  "I've taken my grandmother here multiple times for her appointments and needless to say, this place frustrates me greatly.  They overbook every single day to maximize how much money they make in a day.  They told me it shouldn't take more than an hour, but in the end I missed an appointment I had because I ended up waiting for 2.5 hours.  This has happened on multiple occasions which I see as very unprofessional.  The reason for setting an appointment is to make sure you don't waste time waiting.  Sure all of the patient [*sic*] are mostly senior citizens that don't mind waiting for hours because they can interact and socialize with the countless others who have been waiting, but what about the people who take them there and are forced to wait.

2

If you schedule an appointment for 4:30 and aren't seen until 6, there is definitely something wrong with your scheduling system. I highly suggest that you fix that problem. A free clinic moves faster than this place."

Exhibit B to the complaint is a printout of the Yelp profile page for an individual identified as "Jenny 'CJ' V." The profile includes the individual's photograph and lists her location as San José. A review for Dr. Pham posted on June 26, 2012, states: "He's a crook. Stay away."

Exhibit C to the complaint is a printout of a review of Dr. Pham from the Web site InsiderPages.com posted by a user named "Jenny L." from San José. The review, posted on March 29, 2012, states: " 'Fraud.' They completely breached patient trust by scamming me out of $200. The doctor said he was going to order special glasses to help with my vision. He ended up ordering a pair of standard reading glasses you can purchase from the drug store. Do not trust him. He does this systematically to other patients as well. I was in the lobby and overheard the exact same problem being reported by another patient."

B. *The Anti-SLAPP Motion*

On September 10, 2012, the Lees filed a special motion to strike under section 425.16, the anti-SLAPP law. They supported the motion with declarations from themselves, Young Lee, Chinh Thi Truong, and their counsel. The Lees did not deny making the Internet posts at issue. To the contrary, they included assertions about Dr. Pham's practice similar to the complaints made in the Internet posts. Jenny alleged that she had taken her grandmother to Dr. Pham's clinic on several occasions, and that her grandmother had to wait at least 45 minutes on each occasion despite arriving on time.[2] Jenny alleged that Dr. Pham sold her father common drugstore glasses for $199, and that identical glasses could be purchased elsewhere for less than $16. Her

_____

[2] When referring to the Lees individually, we refer to them by their first names to avoid confusion. We intend no disrespect.

3

declaration attached a complaint about Dr. Pham's sale of the glasses that she had submitted to the Better Business Bureau. She included a copy of an email exchange with the Better Business Bureau dated March 30, 2012—the day after the date of the post by "Jenny L." on InsiderPages.com.

Similarly, Alvin's declaration asserted that he had taken his grandmother to Dr. Pham's clinic on multiple occasions, and that they experienced excessive wait times of up to 70 minutes. Alvin alleged that he observed many other patients waiting in Dr. Pham's waiting room because Dr. Pham had overbooked his appointments. Alvin also repeated Jenny's assertion that Dr. Pham had sold their father inexpensive drugstore glasses, which Dr. Pham described as "prescription" glasses, for $199. Alvin alleged that his father had heard other patients complain about this practice as well.

Young Lee's declarations alleged that he visited Dr. Pham on March 27, 2012, complaining of poor eyesight. Dr. Pham recommended new glasses and told Young he would order them from a laboratory. Dr. Pham said the glasses would ordinarily cost $350, but that Dr. Pham would discount them to $199 if Young paid for them in advance. Young agreed and paid Dr. Pham $199 that evening. When Young showed the glasses to his family, they determined they were common drugstore glasses available for less than $16. After the Lees posted their negative online reviews, Dr. Pham agreed to refund Young $199 for the price of the glasses. Young attached to his declaration a credit card statement showing that Dr. Pham's clinic charged him $199 and $50 on March 27, 2012. Young stated that the $50 charge was for the appointment, and the $199 charge was for the glasses. The statement shows that the $199 charge was reversed two weeks later. Young also complained that Dr. Pham was consistently late for his appointments.

Chinh Tri Truong submitted a declaration stating that she had been Dr. Pham's patient for 13 years, and that Dr. Pham never saw her at the appointed times. She asserted that she always had to wait at least 30 minutes, and that on most occasions, she had to wait between 45 and 70 minutes.

4

Counsel for the Lees submitted a declaration attaching abundant documentation of Dr. Pham's public appearances and publications. Dr. Pham's page on Yelp includes a promotional statement made by Dr. Pham. Counsel's declaration listed numerous other Internet Web sites where Dr. Pham's professional, promotional, and advertising materials can be found. These include promotional videos on YouTube.com and other Web sites, a public blog authored by Dr. Pham, appearances at public meetings of healthcare professionals, numerous publications in scholarly journals, and documentation of Dr. Pham's memberships on various public committees and boards. Counsel asserted that Dr. Pham is a regular public speaker at various conventions and symposia around the country, and that Dr. Pham hosted a talk show about eye surgery on an AM radio station.

In opposition to the anti-SLAPP motion, Dr. Pham filed a declaration denying that he overbooks his patients and stating that his office accommodates walk-in patients as well as patients who are late for their appointments. He denied that he charged Young Lee $199 for the glasses, and he denied telling Young the glasses cost that amount. Dr. Pham stated that the charge of $199 was for services rendered in addition to the glasses. Dr. Pham also submitted a declaration from a "physician practice management expert" who considered the high volume of Dr. Pham's practice and his accommodation of walk-in patients. The expert stated that Dr. Pham's booking practices were normal and did not constitute "overbooking." Counsel for Dr. Pham attached a declaration to authenticate the Web site pages with the Lees' negative reviews of Dr. Pham.

The trial court denied the Lees' anti-SLAPP motion by written order on December 14, 2012. The court ruled that the Lees had failed to meet their burden of showing that their allegedly defamatory statements were protected under section 425.16 as statements made "in connection with an issue of public interest."

C. *Motion to Augment*

Dr. Pham moves to augment the record on appeal with several documents filed in the trial court. These documents include his complaint, his opposition to the anti-SLAPP

5

motion, and the declarations and exhibits attached to them. The Lees oppose the motion as untimely and prejudicial.

Under Rule 8.155 of the Rules of Court, a reviewing court may, at any time, order the record augmented on a party's motion to include any document filed in the case in superior court. The Advisory Committee Comment to the rule states that courts may consider "whether the motion is made within a reasonable time and is not for the purpose of delay."

The Lees do not dispute that the documents at issue were filed in the trial court. Rather, they complain that Dr. Pham made no effort to designate the record below, and that he instead waited until after the Lees filed their opening brief on appeal before moving for augmentation in this court. The Lees urge us to follow *People v. Preslie* (1977) 70 Cal.App.3d 486, 492, holding that "informal requests for augmentation made after a reasonable time has expired from receiving the record on appeal, and particularly as late as those contained in briefs, will be denied absent a strong showing of unusual or unavoidable circumstances giving rise to the delay." The Lees contend that because Dr. Pham waited until after they filed their opening brief, they would be prejudiced by subsequent augmentation.

Ordinarily, we might find the Lees' argument convincing. However, the Lees themselves did not include the complaint in their designations. It is unreasonable to think a reviewing court could adjudicate this matter without the complaint. Appellants could not mount a meaningful appeal without it; indeed, the Lees' opening brief included numerous references to both the complaint and Dr. Pham's opposition to their anti-SLAPP motion despite the absence of these documents from the record.[3] For these

---

[3] The Lees' reply brief include a five-page "Notice of Errata" detailing the instances in which their opening brief should have cited to the complaint and its exhibits. The Lees now stipulate to augmenting the record with the complaint.

6

reasons, we reject the Lees' claim that they were prejudiced by Dr. Pham's delay in augmenting the record. Accordingly, we grant Dr. Pham's motion to augment the record.

## II. DISCUSSION

### A. *Legal Framework*

The anti-SLAPP law allows a defendant to bring a "special motion to strike" a cause of action "arising from any act of [the defendant] in furtherance of that person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue. . . ." (§ 425.16, subd. (b)(1).) Protected acts include, as relevant here, "(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subds. (e)(3) & (e)(4).) The trial court must grant the defendant's motion to strike a cause of action that arises from protected acts unless the plaintiff establishes a "probability that [he or she] will prevail on the claim." (§ 425.16, subd. (b)(1).)

Courts apply a two-pronged analysis when reviewing a challenge to an anti-SLAPP motion. In the first prong, we consider whether the moving party has met the burden of showing that the challenged cause of action arises from conduct protected by the statute. (*Martinez v. Metabolife International, Inc.* (2003) 113 Cal.App.4th 181, 186.) If the conduct is protected, we then consider whether the plaintiff has met the burden of establishing a probability of prevailing on the claim. (*Ibid.*) To satisfy the second step of this test, the plaintiff must make a prima facie showing of facts that would support a judgment in plaintiff's favor if proved at trial. (*Monterey Plaza Hotel v. Hotel Employees & Restaurant Employees* (1999) 69 Cal.App.4th 1057, 1064.) In making its determination, the trial court must consider the pleadings and the supporting and opposing affidavits stating the facts on which liability is based. (*Ibid.*) "We do not

7

weigh credibility or evaluate the weight of the evidence. Rather, we accept as true the evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it has defeated plaintiff's submission as a matter of law." (*Ampex Corp. v. Cargle* (2005) 128 Cal.App.4th 1569, 1576 (*Ampex*).) A reviewing court applies the de novo standard of review without deference to the trial court's ruling. (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 478.)

B. *Whether the Lees' Statements Are Protected Under Section 425.16*

The Lees contend their statements are protected under subdivisions (e)(3) and (e)(4) of section 425.16 because their statements were made in a public forum and involve issues of public interest. Dr. Pham contends that the statements solely involved a private dispute, and did not involve any issue of public interest.

It is well established that an Internet Web site open to the public qualifies as a "public forum" under the anti-SLAPP law. (*Wong v. Tai Jing* (2010) 189 Cal.App.4th 1354, 1366 (*Wong*); *D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1226 (*D.C.*); *Nygård, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1039; *Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1015.) But not every Web site post involves a public issue. (*D.C.*, *supra*, at p. 1226.) Generally, a public issue is implicated if the protected statement concerned: (1) a person or entity in the public eye; (2) a subject that could affect large numbers of people beyond the direct participants; or (3) a topic of widespread, public interest. (*Ibid.*)

Protected statements may include consumer information. "[C]onsumer information that goes beyond a particular interaction between the parties and implicates matters of public concern that can affect many people is generally deemed to involve an issue of public interest for purposes of the anti-SLAPP statute." (*Wong*, *supra*, at p. 1366.) Thus, some courts find that statements including consumer information, to the extent they are not limited to private transactions and instead involve warnings to aid other consumers, constitute matters of public interest under the anti-SLAPP statute.

8

(*Ibid.*; *Carver v. Bonds* (2005) 135 Cal.App.4th 328, 343-344 [statements at issue served as a warning against plaintiff's method of self-promotion, and were provided along with other information to assist patients in choosing doctors]; *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898 [statements were a warning not to use plaintiffs' services].)

Other courts have taken a narrower view regarding what kinds of statements constitute matters of public interest. "[T]o satisfy the public issue/issue of public interest requirement in situations where the issue is of interest only to a limited, but definable portion of the public, such as a private group, organization, or community, 'the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance.' " (*Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 738; accord, *World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1572-1573.) Courts have applied this narrower view to Web site posts as well. (*D.C.*, *supra*, 182 Cal.App.4th at pp. 1215-1216 [one student's posted threat to another student did not involve an issue of public interest].)

It is not necessary in this case to resolve the issue raised with respect to consumer reviews on public Web sites. Even assuming that the Lees' Web site posts about Dr. Pham constitute protected speech, we conclude (below) that the trial court's denial of the anti-SLAPP motion must be affirmed because Dr. Pham has met his burden of showing that he has a probability of prevailing on his defamation claim.

C. *Probability of Prevailing on the Merits*

Dr. Pham contends that, even if the Lees have met their initial burden under the anti-SLAPP statute, he has met his burden of showing a probability of prevailing because the evidence shows the Lees published provably false statements about his practice, and those statements had a natural tendency to discourage potential patients from contacting his clinic for care. The Lees contend Dr. Pham has failed to meet his burden because:

9

(1) he has failed to show the Lees made the statements at issue; (2) the statements consist of opinion, not verifiable statements of fact; (3) he has not shown the statements are false; (4) he is a public figure, and he failed to plead or prove malice; (5) he failed to identify the allegedly defamatory statements with specificity; and (6) he failed to demand a retraction under Civil Code section 48a. We find these arguments without merit and conclude that Dr. Pham has met his burden of showing a probability of prevailing on the claims in his lawsuit.

1. *The Record Supports an Inference That the Lees Made the Statements at Issue*

The Lees contend Dr. Pham failed to show they made the Internet posts in question. We disagree. Dr. Pham's complaint and the declaration of his counsel included printouts of negative reviews showing they were made by persons with the same first names and last initials of the Lees. The Lees, in their declarations, do not deny they made the posts. To the contrary, they both submitted declarations making allegations identical in substance to the assertions made in the posts. Furthermore, the Lees' own declarations state that Young Lee visited Dr. Pham's clinic on March 27, 2012, at which time he purchased glasses from Dr. Pham for $199. The Internet post by "Jenny L." appeared on March 29, 2012, and Jenny's email exchange with the Better Business Bureau occurred the day after the negative review. This evidence supports the inference that the Lees made the allegedly defamatory posts.

2. *The Statements Consist of Objectively Verifiable Fact*

The Lees contend their statements are not actionable as they express opinions, not objectively verifiable statements of fact. We disagree. Jenny's statement, in addition to alleging "fraud" generally, also set forth specific facts underlying the alleged fraud. She claimed specifically that Dr. Pham told her he was ordering "special glasses" for $200, and that he instead gave her commonly available drugstore glasses. She further claimed that another patient complained of the "exact same problem." These are objectively verifiable statements of fact, not mere opinions. Similarly, Alvin's statement expressed

10

more than the mere opinion that Dr. Pham was overbooking patients. He specifically described details of the overbooking, the amount of time he had to wait (2.5 hours), the fact that it had happened on multiple occasions, and the effect of the overbooking on other patients in the waiting room. Again, these claims constitute objectively verifiable facts.

3. *Dr. Pham Has Shown He Can Prove the Statements Are False*

The Lees argue that even if their statements are factual in nature, Dr. Pham has failed to show they are false. Again, we disagree. As to Jenny's statement that Dr. Pham sold her common drugstore glasses for $199, the Lees' own declarations imply the statement is false by stating that Dr. Pham sold the glasses to Young, not Jenny. The Lees argue that it makes no difference whether Dr. Pham sold the glasses to Jenny or her father. For this proposition, they rely on *Masson v. New Yorker Magazine, Inc.* (1991) 501 U.S. 496, 517 ("the statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced' "). But the "effect on the mind of the reader" resulting from Jenny's untrue statement is substantially different from the admitted truth because readers are more likely to credit a firsthand account of a negative experience. Furthermore, Dr. Pham's declaration denied that he charged Young $199 for the glasses. Similarly, as to Alvin's accusation of overbooking, Dr. Pham submitted a declaration specifically denying the allegation. Because we do not judge the credibility of disputed factual claims in reviewing an anti-SLAPP motion, we must assume the fact-finder would credit Dr. Pham's counterclaims. (*Ampex*, *supra*, 128 Cal.App.4th at p. 1576.) On this record, Dr. Pham has established a prima facie case that the Lees' statements were false and defamatory.

4. *Dr. Pham is Not a Public Figure Required to Show Malice*

The Lees claim Dr. Pham is a public figure and that he failed to plead and prove malice. To prevail in an action for defamation, a plaintiff who is a public figure must

11

show the allegedly defamatory statements were made with knowledge of falsity or reckless disregard of the truth. (*Ampex*, *supra*, 128 Cal.App.4th at p. 1569 [citing *New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 279-280].) "The characterization of 'public figure' falls into two categories: the all-purpose public figure, and the limited purpose or 'vortex' public figure. The all-purpose public figure is one who has achieved such pervasive fame or notoriety that he or she becomes a public figure for all purposes and contexts. The limited purpose public figure is someone who 'voluntarily injects him or herself or is drawn into a specific public controversy, thereby becoming a public figure on a limited range of issues.' " (*Ampex*, *supra*, at p. 1577.) For the latter category, "there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants. Second, the plaintiff must have undertaken some voluntary act through which he or she sought to influence resolution of the public issue. In this regard it is sufficient that the plaintiff attempts to thrust him or herself into the public eye. And finally, the alleged defamation must be germane to the plaintiff's participation in the controversy." (*Ibid.*)

The Lees do not claim that Dr. Pham is so famous or notorious that he qualifies as an all-purpose public figure. Rather, the Lees argue that Dr. Pham is a limited purpose public figure in connection with his ophthalmology practice because of numerous public statements and appearances he has made to promote his practice. But it is not enough that a plaintiff has made public statements for the purpose of self-promotion or advertisement. (*Vegod Corp. v. American Broadcasting Companies, Inc.* (1979) 25 Cal.3d 763, 770.) A person must inject himself or herself into a "specific public controversy" to be a vortex public figure. (*Ampex*, *supra*, 128 Cal.App.4th at p. 1577.) The Lees present evidence showing Dr. Pham has made numerous public statements in connection with his business and the practice of ophthalmology in general, but the Lees do not identify any specific public controversy into which he has injected himself. (Cf. *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 25 [plastic surgeon became vortex public

12

figure by injecting himself into public debate over the merits of plastic surgery].) We conclude that Dr. Pham is not a public figure, and that he was therefore not required to plead or prove malice.

5. *The Complaint Identifies Defamatory Statements With Sufficient Specificity*

The Lees also contend Dr. Pham's complaint failed to identify specifically all of the allegedly defamatory statements made by the Lees. "The general rule is that the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint." (*Kahn v. Bower* (1991) 232 Cal.App.3d 1599, 1612, fn. 5.) Dr. Pham's complaint attached the negative reviews posted by the Lees and specifically identified them as the allegedly defamatory statements. The complaint therefore meets the level of specificity required for Dr. Pham's claim.

6. *Civil Code Section 48a Does Not Apply*

Finally, the Lees contend Dr. Pham's action must be stricken because he failed to demand a retraction as required under Civil Code section 48a. That statute provides, in relevant part: "In any action for damages for the publication of a libel in a newspaper, or of a slander by radio broadcast, plaintiff shall recover no more than special damages unless a correction be demanded and be not published or broadcast, as hereinafter provided." The language of this provision expressly limits its operation to libel published in newspapers or slander by radio broadcast. None of the Lees' statements fall into these categories. Moreover, the statute provides no grounds for a motion to strike; it merely limits damages. We find this argument without merit.

7. *Conclusion*

For the reasons above, we conclude Dr. Pham has met his burden of showing a probability that he can prevail on the merits. Accordingly, we conclude the trial court did not err in denying the Lees' special motion to strike under section 425.16.

### III. DISPOSITION

The judgment is affirmed.

13

_____

Márquez, J.

WE CONCUR:

_____

Bamattre-Manoukian, Acting P. J.

_____

Grover, J.