Filed 3/23/15  San Diego County Credit Union v. Roark CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COUNTY CREDIT UNION, | D065117 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2011-00100322-CU-DF-CTL) |
| CARLTON ROARK, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Joel Pressman, Judge.  Affirmed.

Yee & Belilove, Steven R. Yee, Steve R. Belilove, Ross L. Hollenkamp; Higgs, Fletcher & Mack and John Morris for Defendant and Appellant.

Sheppard, Mullin, Richter & Hampton, Shannon Z. Petersen, Travis J. Anderson and Karin Dougan Vogel for Plaintiff and Respondent.

Defendant and appellant Carlton Roark appeals the order denying his anti-SLAPP motion brought under Code of Civil Procedure section 425.16[1] to strike the first, second and fourth causes of action for defamation per se, defamation per quod and breach of contract, respectively (sometimes, challenged causes of action), filed against him by plaintiff and respondent San Diego County Credit Union (SDCCU). Roark, a former employee of SDCCU, contends the court erred in denying his anti-SLAPP motion because there allegedly is no evidence linking him to myriad statements accusing SDCCU and, among others, its CEO, Teresa Halleck (sometimes collectively SDCCU), of stealing money, fraud, bribery, discrimination and financing gay pornography.

The court found Roark satisfied his initial burden to show the challenged causes of action arose from protected activity within the meaning of section 425.16, subdivision (b). However, the court also found SDCCU satisfied its burden to show a probability of prevailing on each of the challenged causes of action and, thus, denied the motion. As we explain, we affirm the order denying Roark's anti-SLAPP motion.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Operative Complaint*

SDCCU employed Roark from 2003 until mid-August 2012, when SDCCU laid off Roark and other SDCCU employees/officers. At the time of separation from SDCCU, Roark was vice president, business lending officer. Pursuant to the separation

---

[1] All statutory references are to the Code of Civil Procedure unless noted otherwise. Section 425.16 is commonly referred to as the anti-SLAPP statute. (*Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1568.) SLAPP is an acronym for "'strategic lawsuit against public participation.'" (*Jarrow Formulas*, *Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

2

agreement and general release of claims (separation agreement), Roark received a severance package from SDCCU worth about $85,000.[2] Roark was subsequently employed by defendant North Island Financial Credit Union (North Island).[3]

SDCCU's operative complaint alleges that in late December 2011, an individual later identified as Roark began a "campaign of defamation and harassment against SDCCU and its officers, directors and employees. Roark . . . disseminated [his] defamatory statements online by creating blogs, posting on consumer review websites, and emailing customers and employees of SDCCU. Roark . . . also sent defamatory emails to state and federal regulators falsely accusing SDCCU of fraud and illegal acts. These false accusations . . . harmed SDCCU's business reputation and otherwise caused damage, including time and effort responding to regulatory inquires and inspections provoked by the defamatory statements."

The operative complaint further alleged that to avoid detection, Roark "purposefully used an email encryption service called Tor Mail. Tor Mail uses a network of domestic and offshore Internet Protocol addresses to send untraceable encrypted messages and information over the Internet." SDCCU's operative complaint listed the defamatory statements in chronological order.

---

[2]  At the time Roark received the severance package, SDCCU still had not identified the individual or individuals responsible for the defamatory statements. SDCCU did not learn Roark was allegedly responsible for making such statements until mid-2013.

[3]  SDCCU's operative complaint asserted causes of action against North Island for misappropriation of trade secrets and unfair competition. However, neither North Island nor these claims are the subject of the anti-SLAPP motion and this appeal.

For example, in late December 2011, a blog article called "'Pirates of the Pacific'" appeared on "Google's Blogspot.com service." After being removed, excerpts of the same article were "reposted on January 26, 2013 on a website known as BayImg.com. This post accused SDCCU of engaging in mortgage fraud," inasmuch as it provided in part:

"Was [SDCCU] attempting to perpetrate a mortgage fraud scheme against its commercial real estate loan borrowers until they got caught?

"[W]hen SDCCU prepared loan documents for their borrowers to actually sign, SDCCU surreptitiously and unbeknownst to those borrowers, inserted an inconspicuous sentence into their Promissory Notes that state 'the initial rate is not considered when applying this limitation.'

"It decided (FOR TWO YEARS UNTIL IT GOT CAUGHT) not to honor what its Promissory Notes called for because the resulting rate change did not favor SDCCU when the high interest rate environment it expected did not materialize. Based on the inconspicuous change SDCCU made to the Promissory Notes of its borrowers which has now backfired on SDCCU, adjustments in the rate should drop all the way to the margin plus index. However, this does not favor SDCCU, so SDCCU has ignored what its own Promissory Notes state. This is flat out fraud."

In mid-January 2012, someone identified as "bankonit@tormail.net" sent the following email to various regulators and/or agencies, including the National Credit Union Administration (NCUA), the Federal Bureau of Investigation (FBI) and the California Department of Financial Institutions (DFI): "A massive mortgage fraud scheme over a period of years is being perpetrated by a large credit union in

4

California. . . [.]  It has been reported to a class-action attorney, investigative reporter, the Congressman for that district and the FBI.  [¶]  We believe the executive leadership and board of that credit union is complicit.  We also think that the NCUA and . . . DFI is [*sic*] either criminally complicit or criminally incompetent . . . [.]"

In late January 2012, an email using the same email address was sent to an individual at the California Bankers Association stating:  "[SDCCU] is actually engaging in a massive mortgage fraud scheme themselves unbeknownst to its borrowers (yet)."  A few days later, Halleck received an email from an anonymous individual using the address "a-former-co-worker-of-his@another-cu.com" stating, "We just heard about all the problems occurring at your credit union.  We had problems like that too when [a certain individual] was here.  Be careful, [this certain individual] has a history of hiding problems.  He also has a habit of getting others to help cover them up until he can find someone to blame.  That's his way.  There is much more he is hiding."  In mid-March 2012, an anonymous individual using the address "not_a_real_email_address@aol.com" emailed the president and CEO of another credit union regarding the certain individual and how the certain individual had "damage[d] . . . the credit union he's now at [SDCCU]."

In late May 2012, Halleck received an email from "nobody@golden1.com" stating that former employees of SDCCU "are talking to the NCUA and FBI about the fraud you are covering up" and stating that "[o]ther credit unions are now talking about you" and that "[i]t's not good."

In late November 2012, an anonymous source using the email "bankers_against_sdccu@no-email.com" sent regulators at NCUA the following

statements: "We are copying the CEO of sdccu . . . [and] dozens of others on this email to the NCUA so that everyone is aware that the NCUA is complicit in a cover up of wrongdoing at sdccu . . . [.] We want all to know that the ncua is turning a blind eye to at least the following. A) An attempted commercial real estate mortgage fraud scheme that was quickly covered up and explained away as an oversight[.] B) An attempt to steal member funds using ATM software that backfired and ended up costing sdccu $2 MM[.] C) Terminating key employees with payoffs to keep quiet about other matters of wrongdoing. . . [.]"

The operative complaint alleges that in late November 2012, Roark misappropriated SDCCU's confidential member information when he sent that member the following email: "Sdccu wants to foreclose on your Ruffin Road property because they want to acquire it cheap and use it as an off-site data processing center. [¶] Our new ceo is evil and since coming here has eliminated a dozen people who were witness to wrongdoing here and about to report it. There were paid off to keep quiet."

In early December, an anonymous individual used the address "sdccufraud@tormail.org" to email regulators at the NCUA stating that they had "proof" of fraud by SDCCU on "hundreds of cases" of residential loans that were sold to the Federal National Mortgage Association (FNMA) and that they were then "focusing on commercial real estate loan fraud." This email then goes on to identify a San Diego property located on Harney Street in which SDCCU allegedly made a "fraudulent loan." It also stated that SDCCU was involved in a $100 million mortgage fraud scheme involving commercial loans; that SDCCU also attempted to "rig their banking platform to defraud members through a check clearing scheme that backfired"; and that SDCCU

6

intentionally originated commercial loans under $1 million "because the annual reporting requirements are minimal enough to keep wrongdoing from ever being discovered."

On January 13, 2013, an individual identified as "Jamie Cisco" emailed Halleck that she "let the most qualified people in business services go and [she] kept the two most incompetent [people] who were responsible for those defective promissory notes on $100 million in commercial loans"; that the defective promissory notes were not a secret; and that SDCCU engaged in mortgage fraud as a result. That same day, an anonymous individual using the address "bankoit@tormail.org" sent an email to an SDCCU "provider" stating loan documents from SDCCU over the past two years had been reviewed and showed that SDCCU among other things had falsified them by stamping such documents with the provider's "copyright notice" when the provider had not approved of such language and that SDCCU had altered internal copies of such documents.

On January 21, 2013, an email sent from the address "bankoit@tormail.org" to regulators at the NCUA claimed that Halleck had "managed to shut down our blog at sdccu.blogspot.com that publicized fraud and incompetence at SDCCU."

On January 26, 2013, a blog article was posted on the website "BayImg.com" from the email address "sdccufraud@tormail.org" stating that SDCCU was financing "Gay Pornography" of the "most extreme kind" and that SDCCU was "only concerned with revenue, and tax-exempt revenue at that." This email further stated that the pornography business was located on Adams Avenue in San Diego.

On or about February 10, 2013, "Jamie Cisco" sent an email using the email address "summertime@inbox.com" to local businesses and the news media stating among

7

other things that SDCCU was "implicated" with an attorney convicted of bank fraud and stating that SDCCU was "[b]oost[ing] San Diego's gay pornography industry," which also included a link to an alleged defamatory posting regarding gay pornography. "Jamie Cisco" on or about May 5, 2013 sent an email using the same "summertime" email address to the NCUA, the DFI and others stating that SDCCU's insurance carrier was being contacted with regard to "malfeasance, fraud and other financial improprieties" by SDCCU board members and stating that the carrier should void any insurance coverage to such members, rendering them personally liable for their alleged misconduct.

As noted, initially SDCCU was unable to identify the individual or individuals responsible for these and other defamatory statements set forth in SDCCU's operative complaint (collectively, defamatory statements). Those responsible managed to conceal their identity by using "sophisticated online anonymizers" to hide their identity. However, as discussed *post*, SDCCU's investigation in 2013 found Roark either "authored and/or distributed" "some or all of the defamatory statements."

B. *The Anti-SLAPP Motion*

1. Moving Papers

Roark in his anti-SLAPP motion contended the challenged causes of action (i.e., first, second and fourth) arose from protected activity within the meaning of subdivisions (b) and (e) of section 425.16. He further contended SDCCU could not satisfy its burden under prong two of section 425.16, subdivision (b) and show a probability of prevailing on the merits of the challenged causes of action because SDCCU had no evidence whatsoever "prov[ing] that Mr. Roark was the author, or the sender, of any of the offending emails or blog posts" set forth in the operative complaint.

8

In support of his anti-SLAPP motion, Roark declared under penalty of perjury that he was not "behind any of the anonymous internet postings or emails" referenced in the operative complaint; that he did not contact the FBI, the NCUA and/or the DFI regarding "any of the anonymous emails or posts"; that he was "stunned" by the accusations he was responsible in some manner for the defamatory statements; that he has never hidden or attempted to hide his identity; and that, in his view, SDCCU provided no evidence demonstrating it was "more likely than not" that he was responsible for any of the defamatory statements.

With regard to the Adams Avenue property, Roark in his declaration in support of the anti-SLAPP motion stated that he did not originate the loan on that property, but instead handled the "underwriting" of that loan, and that the loan was originated by Roark's then-boss. In addition, Roark declared many people both inside and outside SDCCU knew the business being operated on the Adams Avenue property was "adult oriented" and contrary to SDCCU's "'family-friendly' lending policies."

Roark in his declaration also stated that SDCCU erroneously concluded that he was the individual who accessed online records from the San Diego County Recorder's office (County Recorder), which was the subject of a January 26, 2013 posting that was critical of SDCCU and which, as discussed *post*, was one of the postings that ultimately led SDCCU to conclude that Roark was behind most if not all of the defamatory statements.

2. Opposition and Trial Court's Ruling

SDCCU's opposition to the anti-SLAPP motion included a 15-page declaration submitted by Halleck under penalty of perjury. In that declaration, Halleck went through

9

the defamatory statements, most of which were included in the operative complaint summarized *ante*, starting with the December 29, 2011 blog article titled "Pirates of the Pacific" posted on Google's Blogspot.com service. According to Halleck, SDCCU until recently had been unable to determine the identity of the individual or individuals responsible for the defamatory statements because they "managed to conceal their identity by using Tor Mail and similar products, which allow them to send emails and make internet postings anonymously."

However, during the course of its investigation, SDCCU uncovered evidence linking Roark to "many, if not all, of the defamatory statements." Halleck stated the "break" came as a result of the January 26, 2013 post on "BayImg.com" that referenced gay pornography and included a screen shot of the County Recorder's online profile for the Adams Avenue property. Halleck found a similar January 13, 2013 email she received from "Jamie Cisco" at the "summertime@inbox.com" address that included the same screen shot of the Adams Avenue property.[4]

As a result of a subpoena, the County Recorder identified two different internet protocol (IP) addresses that had accessed the online records concerning the Adams Avenue property between January 1, 2012 and January 30, 2013. One of those IP addresses was traced back to Halleck and her email address at SDCCU. Halleck stated she had accessed the County Recorder's website after receiving the January 13, 2013 email and after she saw the post on BayImg.com on January 26, 2013.

---

4    At oral argument, Roark's counsel represented to this court that the County Recorder's screen shot did *not* reference the Adams Avenue property, which representation is belied by the record.

The other IP address identified by the County Recorder was traced to an account with AT&T. Another subpoena issued, and AT&T identified Roark as the holder of the account that accessed the County Recorder's website to create the screen shot link for the January 26, 2013 posting on BayImg.com. The January 26, 2013 posting also referenced the email address "sdccufraud@tormail.org," which, according to Halleck, connected Roark to the defamatory statements using the tor mail address. Similarly, the defamatory statements by "bankonit@tormail.org," "Jamie Cisco" and "summertime@inbox.com" repeating the same gay pornography allegations as the "BayImg.com" blog further supported the finding that Roark was behind and/or involved in these defamatory statements as well.

Halleck stated Roark was further linked to the defamatory statements by the fact he was the loan officer for the Adams Avenue property. As noted, several of the defamatory statements involved SDCCU's financing of a gay pornography business located on that property. Moreover, although Roark was not the loan officer on a property located on Harney Street in San Diego, according to Halleck, Roark was "one of only three commercial loan officers at the time at SDCCU [who] had access to information pertaining to the Harney Street Loan" that was the subject of a December 2, 2012 email to regulators at the NCUA accusing SDCCU of fraud. The December 2 email was sent from the "sdccufraud@tormail.org" address, further linking Roark to the statement.

Legal counsel of SDCCU also submitted a declaration in support of its opposition to the anti-SLAPP motion. Alejandro Moreno stated under penalty of perjury that he prepared over a dozen subpoenas seeking to identify those responsible for the defamatory

11

statements; that these subpoenas sought to identify the IP addresses of those emailing or posting such statements; and that, with one exception, all of the subpoena responses provided IP addresses that devolved back to "Tor Mail."

Moreno stated that despite the efforts of those responsible to remain anonymous, SDCCU got the "break" it needed to identify at least one of the defamers in connection with the January 26, 2013 blog posting on the BayImg.com website. Specifically, Moreno issued a subpoena to the County Recorder's office seeking, among other information, the identification of all IP address numbers that accessed the online records concerning the Adams Avenue property between January 1, 2012 and January 30, 2013. In response,[5] the County Recorder provided a list detailing the time, date and IP address number of each attempt to access the online records of the Adams Avenue property. The response identified two distinct numbers, one of which was "hosted" by Cox Communications and the other by AT&T. Moreno next subpoenaed the records from both companies. Cox Communications showed that one IP address was from SDCCU.

---

[5] SDCCU's opposed motion to judicially notice the County Recorder's "formal" February 21, 2013 verified response to the subpoena is granted. We note in passing that the attachment to the County Recorder's formal response (i.e., Exh. B to July 28, 2014 Request for Jud. Notice) is identical to the documents previously lodged in exhibit C by SDCCU in support of its opposition to the anti-SLAPP motion. (See *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1146-1148 [noting that the court did not commit reversible error when it admitted an edited version of a videotape for purposes of determining whether plaintiff established a probability of success on its libel claim because any objection to such evidence "easily could have been overcome" through a witness, because a "court's main concern" in admitting the videotape as substantive evidence is "making sure the tape accurately depicts what occurred" and because "authentication problems" in connection with the video "tend to be among the easiest evidentiary dilemmas to overcome"].)

12

Halleck stated under penalty of perjury she accessed the County Recorder's website after she learned of the defamatory statements.

AT&T also responded to the subpoena. It showed the other IP address accessing the County Recorder's website in connection with the Adams Avenue property belonged to Roark. AT&T's response also listed Roark's home address as the address associated with the account.

After overruling 78 of Roark's 81 objections to the evidence proffered by SDCCU and hearing oral argument, the court denied the anti-SLAPP motion of Roark. In finding Roark initially satisfied his burden under the anti-SLAPP statute, the court rejected SDCCU's contention that Roark lacked standing to assert the protections of this statute because he swore under penalty of perjury he did not make of the defamatory statements.[6] The court, however, also found SDCCU made a "prima facie showing of facts" that, if credited, would support a judgment in favor of SDCCU on the challenged causes of actions.

In support of this finding, the court ruled as follows:

"Defendant must establish a 'probability' that it will prevail on whatever claims are asserted against the defendant. [Citation.] 'Probability' means that defendant must show a legally sufficient claim and that the claim is supported by competent, admissible evidence within the declarant's personal knowledge. [Citation.]

"Roark argues that, with respect to the probability of success on the merits, there is no admissible evidence from which to conclude that he was in any manner responsible

_____

[6]    SDCCU does not challenge this ruling on appeal.

13

for any of the statements attributed to him to include (i) any allegedly defamatory statements communicated to the regulatory agencies are absolutely privileged, (ii) any statements allegedly made to Halleck, SDCC[U] Board members and/or SDCCU's owners were not published, and (iii) any statements allegedly published on or before July 3, 2012 are barred by the applicable statute of limitations. Thus, Plaintiff has not borne the burden of establishing a prima facie case.

"As to the First and Second Causes of Action, Defamation generally requires (1) a false statement of fact harmful to reputation; (2) that is published; (3) that the defendant failed to use reasonable care to determine the truth or falsity of the statement; and (4) that either caused actual damage or can be assumed to have damaged reputation even if not quantifiable. [Citation.] With respect to the Fourth Cause of Action for Breach of Separation Agreement -- non disparagement clause, SDCCU need only show Roark harmfully disparaged SDCCU. [Citation.]

"False Statement: The declaration of Teresa Halleck indicates many false statements made in websites and emails. False statements include: accusing SDCCU of financing gay pornography by issuing a commercial loan to the Adams Avenue Property (Halleck Dec[l.] paragraphs 17-24); SDCCU stole money from its members; using ATM software; refusing to honor promissory notes for a period of two years because a rate change did not favor SDCCU[] (Halleck Decl. [paragraph] 5); [and] accusing plaintiff of having 'eliminated a dozen people' and paid 'half a dozen' to keep quiet about a 100 million dollar mortgage fraud scheme[] (paragraph 22)[.]

"Teresa Halleck states that the statements are false. (See e.g. Halleck Decl. [paragraphs] 11, 26[.]) The defamatory statements constitute 'criticism of commercial

14

conduct' and therefore do not give rise to the heightened protection of the clear and convincing evidence test. [Citations.] One [can] infer based on the falsity shown that defendant failed to use reasonable care to determine the truth or falsity of the statement[.]

"Publication: The statements were published on the internet and/or emailed . . . to someone other than SDCCU. (Halleck Decl. paragraphs 5-25.) Thus, the statements were 'published' for purposes of defamation. [Citations.]

"The declaration of Teresa Halleck also alleges damages to plaintiff's reputation.

"There is also sufficient evidence to establish a prima facie case that defendant, in fact, is responsible for the statements. Based on the declaration of Teresa Halle[c]k, a January 26, 2013 blog posting on BayImg.com accuses SDCCU of financing pornography at property on Adams Avenue. (Halleck Dec. at paragraph 17.) The blog article included a screen shot of the San Diego County Recorder's online profile for the Adams Avenue Property. (Id.) Subpoenas revealed that the only person, other than SDCCU CEO Teresa Halleck, who accessed the County Recorder's website for the Adams Avenue Property between January 1, 2012 and January 26, 2013 was former SDCCU employee Carlton Roark. (See paragraphs 29-30.)

"While at SDCCU, Roark was the loan officer responsible for the Adams Avenue loan associated with the alleged financing of gay pornography. (Id. at ¶ 32.) Roark was also one of only three commercial loan officers at SDCCU, and had ready access to information pertaining to the . . . Harney Street commercial loan associated with the defamatory posting on December 2, 2012 concerning mortgage fraud. (Id. at ¶ 33.)

"The 'gay pornography blog' uses the email address sdccufraud@tormail.org, which is associated with many other defamatory statements. (Id. at [¶] 31.) By

15

implication, the author of the various defamatory statements must be the same. Further, all but one of the defamatory statements since January 26, 2013 reference the gay pornography blog authored by Roark. (Halleck Decl. paragraphs 18-24.)"

DISCUSSION

I

The Anti-SLAPP Motion

A. *Guiding Principles*

The anti-SLAPP law allows a defendant to bring a special motion to strike a cause of action "arising from any act of [the defendant] in furtherance of that person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) Protected acts include, as relevant here, "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).) A court must grant the defendant's motion to strike a cause of action that arises from protected acts unless the plaintiff establishes a "probability " of prevailing on the claim. (§ 425.16, subd. (b)(1).)

Courts apply a two-pronged or two-step analysis when reviewing a challenge to an anti-SLAPP motion. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. [Citation.]" (*Equilon Enterprises v. Consumer Cause, Inc.* (2002)

16

29 Cal.4th 53, 67; see *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 186.)

Second, if the conduct is protected, the court then considers whether the plaintiff has met the burden of establishing a probability of prevailing on the claim(s) subject to the anti-SLAPP statute. (See § 425.16, subd. (b)(1); see also *Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, 29 Cal.4th at p. 67.) To satisfy the second step, the plaintiff must submit admissible evidence and make a prima facie showing of facts that would support a judgment in the plaintiff's favor if proved at trial. (*Monterey Plaza Hotel v. Hotel Employees & Restaurant Employees* (1999) 69 Cal.App.4th 1057, 1064; *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 823 [noting that in the second step of the anti-SLAPP statute a plaintiff must show the challenged cause of action is both legally sufficient and supported by admissible evidence that, if credited, would be sufficient to sustain a favorable judgment], disapproved on another ground as stated in *Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, 29 Cal.4th at p. 68, fn. 5.)

The court in making the probability of prevailing determination should consider the pleadings and the supporting and opposing affidavits stating the facts on which liability is based. (*Monterey Plaza Hotel v. Hotel Employees & Restaurant Employees*, *supra*, 69 Cal.App.4th at p. 1064.) However, "[w]e do not weigh credibility or evaluate the weight of the evidence. Rather, we accept as true the evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it has defeated plaintiff's submission as a matter of law." (*Ampex Corp. v. Cargle* (2005) 128 Cal.App.4th 1569, 1576.)

17

"The plaintiff's burden on what the Supreme Court has referred to as the 'minimal merit' prong of section 425.16, subdivision (b)(1) (*Navellier v. Sletten* [(2002)] 29 Cal.4th [82,] 95, fn. 11) has been likened to that in opposing a motion for nonsuit or a motion for summary judgment. [Citation.] 'A plaintiff is not required "to *prove* the specified claim to the trial court"; rather, so as to not deprive the plaintiff of a jury trial, the appropriate inquiry is whether the plaintiff has stated and substantiated a legally sufficient claim. [Citations.]'" (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 675, fn. omitted; see *Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 736 [noting a "plaintiff need only establish that his or her claim has minimal merit to avoid being stricken as a SLAPP"].)

We review independently whether a defendant showed a claim arose from protected activity within the meaning of the anti-SLAPP statute and, if so, whether the plaintiff showed a probability of prevailing on that claim. (*Wilcox v. Superior Court*, *supra*, 27 Cal.App.4th at pp. 823-824; *Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 184.)

B. *Probability of Prevailing on the Merits*

1. Waiver

Citing *Navellier v. Sletten* among other authorities, SDCCU initially contends that Roark waived the protections afforded by the anti-SLAPP statute when he signed the employment agreement with SDCCU in 2003 and/or when he entered into the separation agreement with SDCCU in 2012 in which he, among other things, agreed not to disparage or defame SDCCU. We disagree.

18

Our review of *Navellier v. Sletten*, as discussed in *DaimlerChrysler Motors Co. v. Lew Williams, Inc.* (2006) 142 Cal.App.4th 344, suggests that a defendant, who enters into one or more agreements not to disparage another like Roark here, does not waive the protection of the anti-SLAPP statute; instead, the issue of waiver and breach is relevant in step two and whether the plaintiff can show a probability of prevailing on the claim. (See *Id.* at p. 351 [noting our high court in *Navellier* "made clear the mere fact the constitutional speech occurred in violation of a contract did not by itself preempt the application of the anti-SLAPP statute" and further noting that "the issue of breach [of such a contract] was to be addressed under the statute's merits prong" (i.e., in step two)].)

Aside from waiver, SDCCU does not challenge the finding of the trial court that the challenged causes of action (i.e., first, second and fourth) arose out of protected speech within the meaning of subdivisions (b)(1) and (e)(2) of section 425.16.

2. Public Figure

Roark contends that SDCCU is a limited public purpose or "'vortex'" public figure and, therefore, that it must establish a "probability that [it] can produce clear and convincing evidence" showing the defamatory statements "were made with knowledge of their falsity or with reckless disregard of their truth or falsity." (*Ampex Corp. v. Cargle*, *supra*, 128 Cal.App.4th at pp. 1577-1578, citing *New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 279-280.) A "limited purpose public figure is an individual who voluntarily injects him or herself or is drawn into a specific public controversy, thereby becoming a public figure on a limited range of issues." (*Ampex Corp. v. Cargle*, *supra*, at p. 1577, citing *Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 351.)

19

To characterize a plaintiff as a limited purpose public figure, the courts consider the following elements: "First, there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants. Second, the plaintiff must have undertaken some voluntary act through which he or she sought to influence resolution of the public issue. In this regard it is sufficient that the plaintiff attempts to thrust him or herself into the public eye. And finally, the alleged defamation must be germane to the plaintiff's participation in the controversy." (*Ampex Corp. v. Cargle*, *supra*, 128 Cal.App.4th at p. 1577.)

Here, without deciding the other issues, we conclude SDCCU did not thrust itself into the public eye, in contrast, for example, to the plaintiffs in *Ampex Corp. v. Cargle* who voluntarily inserted themselves into a public controversy by way of press releases and letters posted on their website. (See *Ampex Corp. v. Cargle*, *supra*, 128 Cal.App.4th at p. 1578; see also *Gertz v. Robert Welch, Inc.*, *supra*, 418 U.S. at p. 345 [noting those "classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved" and noting such individuals do so to "invite attention and comment"].) For this reason alone, we conclude SDCCU was not a limited purpose public figure under the facts of this case, and, as such, it was not required to establish Roark acted with actual malice for purposes of satisfying its minimal burden under section 425.16, subdivision (b) to show a probability of prevailing on the challenged causes of action.[7]

---

7     In any event, we further conclude there was no "public controversy" in the instant case separate and apart from, and/or prior to, the controversy caused by the defamatory statements. (See *Huchinson v. Proxmire* (1979) 443 U.S. 111, 114, 134-135 [rejecting contention that plaintiff was a limited public figure because it was reported in the media

20

### 3. Defamation Causes of Action

"'"Defamation is an invasion of the interest in reputation. The tort involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." [Citation.]' . . . Defamatory publications that are made 'by writing, printing, picture, effigy, or other fixed representation to the eye,' are considered libel. (Civ. Code, § 45.) . . . . [¶] Where a libelous statement 'is defamatory *on its face,* it is said to be libelous per se, and actionable without proof of special damage. But if it is defamation *per quod,* i.e., if the defamatory character is not apparent on its face and requires an explanation of the surrounding circumstances (the "innuendo") to make its meaning clear, it is not libelous per se, and is not actionable without pleading and proof of special damages.' [Citations.]" (*Burrill v. Nair* (2013) 217 Cal.App.4th 357, 382.) "[F]alse statements charging the commission of crime or tending directly to injure a plaintiff in respect to his or her profession by imputing dishonesty or questionable professional conduct are defamatory per se. [Citations.]" (*Id.* at p. 383.)

Initially, we note that Roark's primary contention on appeal is *not* that the statements against SDCCU were not defamatory, but rather that he was not the defamer. Although Roark disputes under penalty of perjury that he was "behind any of the

---

plaintiff was successful in receiving federal funds for research after a member of Congress publically presented federal agencies that sponsored plaintiff's research the "'Golden Fleece' award" because plaintiff was not a public figure *before* "the controversy engendered by the Golden Fleece" award and noting that "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure"].) As such, for this separate reason, we reject Roark's contention that SDCCU was a limited purpose public figure.

21

anonymous internet postings or emails" referenced in the operative complaint, we conclude SDCCU submitted sufficient admissible evidence,[8] including in the declarations of Halleck and Moreno (summarized *ante*) that, if credited, satisfies SDCCU's minimal burden to show Roark was in fact involved in or behind the defamatory statements. When faced with conflicting evidence in reviewing an anti-SLAPP motion, "we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence *only* to determine if it has defeated that submitted by the plaintiff as a matter of law.'" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3, italics added; *Ampex Corp. v. Cargle*, *supra*, 128 Cal.App.4th at p. 1576.) As such, we reject Roark's contention on appeal that SDCCU did not make a prima facie showing linking him to the defamatory statements for purposes of the anti-SLAPP statute.

---

[8]     Although Roark in his opening brief contends the court abused its discretion and thus erred in overruling all but three of his 81 evidentiary objections, we note his primary contention with respect to the evidentiary rulings involves the County Recorder's response to SDCCU's subpoena, an issue we have already addressed and resolved in this case. (See fn. 4, *ante*.) We note Roark, in any event, does not provide any meaningful discussion or analysis, including citation to authority, in his opening brief regarding his claim of error with respect to the remaining 77 or so evidentiary objections he contends were improperly overruled by the court. As such, we conclude Roark has not satisfied his burden on appeal to show the court erred with respect to these objections. (See *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074 [noting the general rule that it an appellant's "'burden on appeal to affirmatively challenge the trial court's evidentiary ruling[s], and demonstrate the court's error'" and further noting that when an appellant fails "'to identify the court's evidentiary ruling as a *distinct assignment of error*" by merely making "cursory" arguments with respect to such rulings, the appellant has not satisfied his or her burden (italics added)].)

22

We also conclude SDCCU has satisfied its minimal burden to show a probability of prevailing on its defamation causes of action (i.e., its first cause of action for defamation per se and its second cause of action for defamation per quod). As noted *ante*, the defamatory statements contained many factual statements that were alleged to be false, including accusing SDCCU of: 1) financing gay pornography merely because SDCCU made a commercial loan to individuals operating a business in the Adams Avenue property that Roark contends in his own declaration was involved in an "adult oriented" business; 2) stealing money or attempting to steal money from members using ATM software that "backfired" and ended up costing SDCCU $2 million; 3) engaging in or attempting to engage in a "commercial real estate mortgage fraud scheme" that, once discovered, "was quickly covered up and explained away as an oversight"; 4) accusing SDCCU of "flat out fraud" by refusing to honor promissory notes of borrowers after higher rates anticipated by SDCCU did not materialize; and 5) paying off more than a "Half A Dozen Employees With Knowledge Of The Scheme [i.e., 'Massive Commercial Mortgage Fraud']" in order to keep such individuals "Quiet While The Company [i.e., SDCCU] Creates Plausible Deniability." Because a reasonable trier of fact could conclude the above statements "imply a provably false factual assertion" (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 902), we conclude SDCCU made a prima facie showing the defamatory statements are false for purposes of the defamation causes of action.

That Roark submitted evidence suggesting some or all of these factual assertions are true and thus not actionable does not overcome the showing of falsity based on the evidence, if credited, submitted by SDCCU in the Halleck declaration. (See *Peregrine*

23

*Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, *supra*, 133 Cal.App.4th at p. 675; *Hailstone v. Martinez*, *supra*, 169 Cal.App.4th at p. 735.) In any event, that a published statement "contain[s] some truths" does "not insulate the publication as a whole from a claim of defamation." (*Wilbanks v. Wolk*, *supra*, 121 Cal.App.4th at pp. 901-902 [noting the "ultimate question" is whether "a reasonable trier of fact could conclude that the published statements imply a provably false factual assertion"].) Similarly, the contention that any such statements merely constitute an "opinion" does not preclude such statements from being actionable. (*Id.* at p. 903 [noting that "'[e]ven if the speaker states the facts upon which he [or she] bases his [or her] opinion, if those facts are either incorrect or incomplete, or if his [or her] assessment of them is erroneous, the statement may still imply a false assertion of fact"].)

Moreover, many, if not all, of the defamatory statements were also defamatory per se under California law. (See, e.g., *Burrill v. Nair*, *supra*, 217 Cal.App.4th at p. 383 [noting false statements "charging the commission of crime or tending directly to injure a plaintiff . . . by imputing dishonesty or questionable professional conduct are defamatory per se"]; *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles*, *supra*, 117 Cal.App.4th at p. 1145, fn. 7 [noting a statement that a plaintiff is guilty of a crime is libelous per se]; Pen. Code, § 532f , subd. (a) [noting a "person commits mortgage fraud if, with the intent to defraud, the person . . . : [¶] . . . [d]eliberately makes any misstatement, misrepresentation, or omission during the mortgage lending process with the intention that it be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process"].)

24

We also conclude SDCCU has satisfied its minimal burden to show the defamatory statements were "published," as the record shows many if not all of such statements were either posted on the internet or emailed to someone other than SDCCU. (See *Wilbanks v. Wolk*, *supra*, 121 Cal.App.4th at p. 901 [noting an internet posting constituted a "publication" for defamation purposes].)

Finally, SDCCU submitted prima facie evidence to satisfy its minimal burden under the anti-SLAPP statute that it was damaged, even assuming SDCCU was required to make this showing in light of the fact the statements accuse SDCCU of criminal conduct and/or fraud. (See *Burrill v. Nair*, *supra*, 217 Cal.App.4th at p. 382 [noting a statement that is defamatory on its face is "'actionable without proof of special damage'"].) Indeed, the declaration of Halleck, SDCCU's CEO, contains evidence that, if credited, shows SDCCU sustained harm to its "business reputation," lost customers and revenue and incurred losses based on the "hundreds of hours of employee time" in responding to inquires by government regulators. All told, SDCCU estimated it incurred losses of "hundreds of thousands of dollars" resulting from the defamatory statements.

4. Breach of Separation Agreement

Roark concedes SDCCU's fourth cause of action for breach of separation agreement is subsumed into defamation causes of action. SDCCU in its operative complaint alleged that Roark breached a "'Non-Disparagement'" clause within the separation agreement that expressly prohibited him from making or publishing any "'derogatory or adverse statements . . . regarding SDCCU or any of its present or former directors, officers or employees.'"

Because, as we have noted, SDCCU satisfied its minimal burden under the anti-SLAPP statute to show a probability of prevailing on its defamation causes of action and because the fourth cause of action for breach of separation agreement is subsumed into those claims, we likewise conclude SDCCU also satisfied its minimal burden of prevailing on this claim for purposes of section 425.16.

## DISPOSITION

We affirm the order denying Roark's anti-SLAPP motion to the challenged causes of action. SDCCU to recover its costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

McDONALD, J.

O'ROURKE, J.