Filed 2/8/16  Bright Star Schools v. Hilger CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BRIGHT STAR SCHOOLS,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JEFF HILGER,<br><br>    Defendant and Appellant. | B263844<br><br>(Los Angeles County<br>Super. Ct. No. BC562012) |

APPEAL from an order of the Superior Court of the County of Los Angeles, Ernest Hiroshige, Judge.  Reversed.

Winston, Garrou & Mooney, Jerome H. Mooney and John H. Weston for Defendant and Appellant.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall and John C. Lemmo for Plaintiff and Respondent.

# INTRODUCTION

Defendant and appellant Jeff Hilger appeals from a portion of the trial court's order denying, in part, his Code of Civil Procedure section 425.16[1] (anti-SLAPP statute[2]) special motion to strike. Defendant contends the trial court erred in denying his anti-SLAPP motion as to the first and second causes of action because they arise from a protected activity and plaintiff cannot establish there is a probability it will prevail on these claims. We reverse the order denying the motion to strike the first and second causes of action.

# FACTUAL BACKGROUND

In 2003, defendant founded and was one of the original members of the Board of Directors (Board) of Stella Middle Charter Academy, which ultimately became plaintiff. Defendant served in various management capacities for plaintiff over approximately 10 years.

Plaintiff is a non-profit corporation organized and existing under the laws of the State of California. Plaintiff operates five public charter schools pursuant to charters granted by the Los Angeles Unified School District, and has over 2,000 students at grade levels five through twelve.

Plaintiff's Second Amended and Restated By Laws (bylaws) provides plaintiff is managed under the ultimate discretion of the Board, and the Board is empowered to select plaintiff's officers. The bylaws define officers and outline how they are selected, as follows: "Section 1. Officers. The officers of the corporation shall be a Chairman of

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]     SLAPP is an acronym for strategic lawsuit against public participation. (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 57, fn. 1.)

the Board or a President, or both, a Secretary and a Treasurer.  The corporation may also have, at the discretion of the Board, one or more Vice Presidents, one or more Assistant Secretaries, one or more Assistant Treasurers, and such other officers as may be elected or appointed in accordance with the provision of Section 3 of this Article IV.  [¶]  Section 2.  Election.  The officers of the corporation, except such officers as may be elected or appointed in accordance with the provisions of Section 3 or Section 5 of this Article IV, shall be chosen annually by, and shall serve at the pleasure of, the Board, and shall hold their respective offices until their resignation, removal, or other disqualification from service, or until their respective successors shall be elected.  [¶]  Section 3.  Subordinate Officers.  The Board may elect, and may empower the chief executive officer of the corporation to appoint, such other officers as the business of the corporation may require, each of whom shall hold office for such period, have such authority and perform such duties as are provided in these Bylaws or as the Board may from time to time determine.  [¶] . . . [¶]  Section 5.  Vacancies.  A vacancy in any office because of death, resignation, removal, disqualification, or any other cause shall be filled in the manner prescribed in these Bylaws for regular election or appointment to such office, provided that such vacancies shall be filled as they occur and not on an annual basis."[3]

From mid-2008 through 2012, defendant supervised the "academic aspects" of plaintiff.  On August 13, 2013, after defendant returned from a one-year sabbatical, plaintiff and defendant entered into a Separation and Release Agreement (separation agreement).  Pursuant to the separation agreement, defendant voluntarily resigned his employment with plaintiff, and plaintiff agreed to pay to defendant the sum of $80,000.

The separation agreement included a "nondisparagement clause" stating, "[Plaintiff's] officers and directors and [defendant] agree that they will not make any negative, derogatory or disparaging statements, publications or comments, referencing, relating to, about or regarding each other.  It is understood and agreed that this is a material term of this Agreement and that any breach at all of this term shall constitute a

---

[3]     Defendant declared that he was "involved in the creation of" the bylaws.

material breach.  However, this section will in no way prevent [defendant] from testifying truthfully pursuant to an enforceable subpoena."

The separation agreement also included a "Confidentiality of Employer's Information" clause (confidentiality clause) stating in part, "Following the Termination Date,[4] [defendant] shall neither disclose, nor use, any information of [plaintiff] . . . which plaintiff has treated as confidential, proprietary or trade secret ('Confidential Information') including, but not limited to information technology systems, . . . lists and other information concerning customers and potential customers, . . . information that could either cause or potentially cause damage or injury to [plaintiff] . . .  or employees and/or any other information [defendant] reasonably should know is treated as confidential by [plaintiff] . . . ."  That clause provides defendant may only disclose plaintiff's confidential information under certain circumstances that are not applicable here.

## PROCEDURAL BACKGROUND

Plaintiff filed a complaint alleging cause of action for breach of written contract (first cause of action); breach of duty of good faith and fair dealing (second cause of action); intentional interference with prospective economic advantage (third cause of action); trade libel (fourth cause of action); unlawful business practice (fifth cause of action); common law unfair competition (sixth cause of action); and temporary and permanent injunction (seventh cause of action).[5]

According to plaintiff's complaint, defendant made, and worked in concert with others to make, "negative statements about [plaintiff], [plaintiff's] employees and the

---

[4]     "Termination Date" is not defined in the separation agreement.  It defines "Resignation Date" as August 10, 2013, the date on which defendant "voluntarily resign[ed] his employment with" plaintiff.  Presumably, "Termination Date," as used in the separation agreement, was intended to mean "Resignation Date."

[5]     This appeal concerns only the first and second causes of action.

4

quality of education offered by [plaintiff]." Plaintiff alleged in its first cause of action that defendant breached the separation agreement because defendant violated the nondisparagement and confidentiality clauses contained therein. The first cause of action states defendant breached the nondisparagement clause by "making negative, derogatory and/or disparaging statements and comments about [plaintiff] and its staff," including statements made about plaintiff on social media sites; and breached the confidentiality clause by "using and disclosing confidential, proprietary or privileged information . . . ." Plaintiff alleged in its second cause of action that defendant breached the implied covenant of good faith and fair dealing contained in the separation agreement.

On December 1, 2014, pursuant to plaintiff's application, the trial court issued a limited preliminary injunction, which injunction provided in part as follows: "Pending trial in this action, Defendant . . . and his agents [are] restrained and enjoined from . . . [¶] [m]aking negative or disparaging statements or comments about [plaintiff's] officers and directors. The terms officers and directors are defined by [plaintiff's] Articles of Incorporation and Bylaws." [¶] . . . [¶] [Defendant] will *not* be restrained from . . . [¶] [m]aking negative comments about [plaintiff], its teachers, or other non-officer/director employees . . . ."

Defendant filed an anti-SLAPP motion challenging, inter alia, the first and second causes of action, contending these causes of action arise from a protected activity—"any written or oral statement or writing made in a . . . public forum in connection with an issue of public interest . . . " (§ 425.16, subd. (e)(3))—and plaintiff cannot establish there is a probability it will prevail on these claims. Plaintiff opposed the anti-SLAPP motion.

Plaintiff supported the opposition with, among other things, a declaration from the principal of one of plaintiff's schools stating defendant and those associated with him made "false and negative statements about me and the quality of the education provided by [plaintiff]. [Defendant] has repeatedly accused me of having a sexual relationship with a former [plaintiff] student and giving him alcohol." Other declarations stated: defendant's "close associate" said plaintiff's dean of student conduct handed illegal drugs to a student; defendant and his "agents" distributed flyers to plaintiff's students

5

indicating, inter alia, plaintiff was unnecessarily charging students for bus transportation; defendant and his associates handed flyers to plaintiff's students and parents stating, inter alia, "We want a leadership change (Goodbye to [among others, plaintiff's chief executive officer (CEO), and a principal for one of plaintiff's schools] who all make over $100,000 a year). We want to see all the same teachers, students, and (mostly) programs, just run by people who actually care."

Plaintiff submitted a declaration from Ari Engelberg, plaintiff's CEO, stating defendant e-mailed a seven-page letter to 200 of plaintiff's staff at their work e-mail addresses. The letter stated, in part, plaintiff's Board and plaintiff's CEO, as plaintiff's original president, "watched from the sidelines" when defendant had "a lot of control over the decisions and directions of [plaintiff's] schools"; plaintiff's CEO (who was also plaintiff's original president) "seemed like a good and smart guy" but soon filled plaintiff's Board with his personal friends; when Engelberg became CEO "'which people got to make which decisions' was completely unclear and chaotic"; "whatever . . . is being spent on 'back-office' is hurting the actual schools and programs by taking money away and diverting it elsewhere"; and the parents want plaintiff's CEO, and a principal for one of plaintiff's schools, among others, to "step down" and "[t]his is nothing personal[—]it's about too many bad decisions being made and too much covering up of problems."

The Engelberg declaration also stated, "I worked with [defendant] to negotiate the separation agreement. We went through several drafts of the agreement. Each draft contained a provision stating that [defendant] could not disparage [plaintiff]. On the last iteration of the agreement, [defendant] asked that we make the nondisparagement provision mutual so that [plaintiff] could not disparage him either. Since [plaintiff] cannot control what its many other lower level employees might say (including teachers, janitors, office staff), I agreed that [plaintiff's] officers and directors would not disparage [defendant]. I revised the nondisparagement paragraph to reflect that agreement. However, the provision was inadvertently changed to read that [defendant] and [plaintiff's] officers and directors would not disparage each other. Our agreement was

6

that [defendant] would not disparage [plaintiff] and [plaintiff's] officers and directors would not disparage [defendant]." Plaintiff also submitted declarations from several parents stating parents of students attending plaintiff's schools contacted them by telephone asking them to join a group "led by" defendant concerning plaintiff's schools.

The trial court denied the anti-SLAPP motion as to the first and second causes of action,[6] stating defendant met his burden to show the causes of action arose from a protected activity, but plaintiff established there is a probability it will prevail on the claims. As to defendant's causes of action arising from a protected activity, the trial court ruled, "[A]t least some of the statements fall within" section 425.16, subsection (e)(3) because websites accessible to the public are public forums for purposes of the anti-SLAPP statute; and the statements concern "the quality of education, safety of students, and administration of a charter school," which statements "are issues of public interest."

Regarding the probability plaintiff will prevail on the claims, the trial court said there is evidence defendant made disparaging statements concerning a principal for one of plaintiff's schools and plaintiff's dean of student conduct. The trial court continued, "Although the separation agreement does not define the term 'officers,' that term can be reasonably interpreted to include a school principal and a dean for all of plaintiff's schools."[7] The trial court also said there is evidence defendant made disparaging statements concerning Engelberg, and "it is undisputed that Engelberg is the CEO of Plaintiff." The trial court further ruled plaintiff "points to evidence that Defendant may have breached paragraphs 8 and 12 of the separation agreement by sending an email from his [school] e-mail account and accessing confidential contact information."

---

[6] The trial court granted the anti-SLAPP motion as to the fourth cause of action, and also denied it as to the third, and fifth through seventh causes of action.

[7] The trial court stated the "nondisparagement" clause "does not expressly prohibit negative comments against Plaintiff, so long as such comments are not disparaging of officer and directors."

7

## DISCUSSION

### A. Adequate Record

Defendant failed to provide a reporter's transcript or a suitable substitute of the hearing on his anti-SLAPP motion. We asked the parties to brief whether defendant's failure to do so warrants affirmance based on the inadequacy of the record.

Defendant contends, and plaintiff agrees, that a reporter's transcript of the hearing is not required because, as noted below, the issue in this appeal—the trial court's denial of a portion of defendant's anti-SLAPP motion—is reviewed de novo. (*Chodos v. Cole* (2012) 210 Cal.App.4th 692, 700.) We agree.

### B. Anti-SLAPP Motion

#### 1. Standard of Review

We review de novo the trial court's order denying an anti-SLAPP motion. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326; *Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 79.) "'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) However we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.]" (*Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 326.)

#### 2. Applicable Law

"'A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural

8

remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights. [Citation.]' [Citation.]" (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 34.) "The goal [of section 425.16] is to eliminate meritless or retaliatory litigation at an early stage of the proceedings." (*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 806.)

Section 425.16, subdivision (b)(1) provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) In considering the application of the anti-SLAPP statute, courts engage in a two-step process. "'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712.) "''''The defendant has the burden on the first issue, the threshold issue; the plaintiff has the burden on the second issue. [Citation.]' [Citation.]" [Citations.]'" (*Rohde v. Wolf*, *supra*, 154 Cal.App.4th at pp. 34-35.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89; *Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456.)

3.    *Analysis*

a)    Protected Activity

Defendant contends the challenged causes of action arise from a protected activity pursuant to section 425.16, subd. (e)(3)—"any written or oral statement or writing made

9

in a . . . public forum in connection with an issue of public interest . . . ." (§ 425.16, subd. (e)(1).)  We agree.

### i)      Public Forum

"Under established authority, when a cause of action is based on both protected and unprotected activity, it is subject to the anti-SLAPP statute, *unless the protected activity is merely incidental to the unprotected conduct*.  [Citations.]"  (*Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 967, italics added.)  In *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, the court held that a cause of action alleging breach of fiduciary duty satisfied the first prong of the anti-SLAPP statute, even though only two of 16 factual bases of the cause of action targeted protected activity.  The other 14 factual bases targeted nonprotected activity.  (*Id*. at pp. 1544-1545, 1548-1553.)  The court explained that the two factual bases targeting protected activity "could each be the sole and adequate basis for liability under the cause of action," and for this reason were not "merely incidental" to the numerous additional allegations targeting nonprotected activity.  (*Id*. at p. 1551.)  "[A] plaintiff cannot frustrate the purposes of the [anti-]SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.'"  (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308.)

For purposes of the anti-SLAPP legislation, "'[a] "public forum" is . . . defined as a place that is open to the public where information is freely exchanged.'  [Citation.]"  (*Cabrera v. Alam* (2011) 197 Cal.App.4th 1077, 1087.)  "The [anti-SLAPP] statute does not limit its application to certain types of petition activity.  The Legislature recognized that 'all kinds of claims could achieve the objective of a SLAPP suit—to interfere with and burden the defendant's exercise of his or her rights.'"  (*Beilenson v. Superior Court* (1996) 44 Cal.App.4th 944, 949, quoting *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 652, overruled on other grounds in *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 68, fn. 5.)

10

Arguably, there was a factual basis underlying the first and second causes of action that pertained to statements not made in a public forum, i.e., statements made in an email. However, other grounds, i.e., statements made in flyers and on social media websites, are indicative of public speech.

First, plaintiff alleged flyers were offered to those who appeared to be either (a) students at the school; or (b) parents of those students. The record demonstrates these flyers were handed out "on or near the school." However, there is nothing in the record to suggest the recipients of the flyers were verified students and their parents. Rather, the record suggests anyone who appeared to be students or parents were offered flyers. Handing out flyers to passersby who appear to be students of a nearby school, or parents of those students, constitutes speech in a public place where information is freely exchanged. (See e.g., *Macias v. Hartwell* (1997) 55 Cal.App.4th 669, 674 [mailing of campaign flyers recognized as public forum].)

Second, the first and second causes of action alleged, respectively, defendant made disparaging statements on "social media" and "Facebook," and "encouraged others . . . to repeat these false statements." At oral argument, plaintiff's counsel identified the Facebook information as "posts," subjected to being "liked" by visitors to the webpage. It is clear the social media information did not constitute private messaging. These statements were thus made in a public forum. (See *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1001-1002; *Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4 [statements made on websites readily accessible to the public are deemed statements made in a public forum]; *Ampex Corp. v. Cargle* (2005) 128 Cal.App.4th 1569, 1576.)


ii)     Public Interest

The term "issue of public interest" under section 425.16, subdivision (e), is interpreted broadly. (*Rivera v. First DataBank, Inc.* (2010) 187 Cal.App.4th 709, 716.) There is no requirement that the issue be "significant." (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1042.) ""[A]n issue of public interest" within the meaning of section 425.16, subdivision (e)(3) [and by virtue of identical language,

11

subdivision (e)(4),] is *any issue in which the public is interested*.' [Citation.]" (*Rivera v. First DataBank, Inc.*, *supra*, 187 Cal.App.4th at p. 716.) In determining whether a matter is of public interest within the meaning of section 425.16, "[w]e look for 'the *principal thrust or gravamen* of the plaintiff's cause of action.' . . . The 'critical consideration' is what the cause of action is '*based on*.'" (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 465.)

Here, the principal thrust of the first and second causes of action centers on statements defendant made relating to the quality of the education provided by plaintiff, the safety of plaintiff's students, and the proper administration of school policy. For example, plaintiff contends defendant stated, among other things, one of the school principals had engaged in inappropriate sexual behavior with a former student; a teacher with a record of drunk driving was allowed to drive the students without notice to the parents; drugs confiscated from a student were not properly handled or reported; plaintiff's school unnecessarily charged students for bus transportation; and the academic quality of the schools was deteriorating.

As noted by the trial court, the statements made by defendant concern "the quality of education, safety of students, and administration of a publicly funded charter school," which statements "are issues of public interest." (*Plyler v. Doe* (1982) 457 U.S. 202, 221-222 ["education has a fundamental role in maintaining the fabric of our society"]; *Brown v. Bd. of Educ*. (1954) 347 U.S. 483, 493 ["education is perhaps the most important function of state and local governments"]; *Hecimovich v. Encinal School Parent Teacher Organization*, *supra*, 203 Cal.App.4th at p. 468 [safety in youth sports and "problem coaches/problem parents" in youth sports are issues of public interest]; *Morrow v. Los Angeles Unified School Dist.* (2007) 149 Cal.App.4th 1424, 1436-1439 [school superintendent's critical statements about a school principal on whose campus incidents of racially motivated student violence had occurred were statements about "an issue of public interest"]; *McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 109-110 [statements by university officials explaining why the head football coach was terminated were statements about "an issue of public interest"]; *Ghafur v. Bernstein*

12

(2005) 131 Cal.App.4th 1230, 1238 ["'Clearly, the governance of a public school system is of the utmost importance to a community, and school board policies are often carefully scrutinized by residents'"].)

> b)     Probability of Prevailing on Merits

In the context of defendant's anti-SLAPP motion, plaintiff has not demonstrated a probability of prevailing on the merits. To do so "plaintiff must show that the complaint is legally sufficient and must present a prima facie showing of facts that, if believed by the trier of fact, would support a judgment in the plaintiff's favor. [Citations.] The plaintiff's showing of facts must consist of evidence that would be admissible at trial. [Citation.] The court cannot weigh the evidence, but must determine whether the evidence is sufficient to support a judgment in the plaintiff's favor as a matter of law, as on a motion for summary judgment. [Citations.]" (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1346; see *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 719, fn. 5; *1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 585.)

There is no evidence defendant disparaged any of plaintiff's officers or directors. Plaintiff is a non-profit corporation. Defendant was one of the founders of plaintiff and he assisted in creating the bylaws. The terms "officers" and "directors" are proscribed in the Corporations Code (Corp. Code, §§ 301 [election of directors], 312 [identifying officers required for a corporation include "chairperson of the board," "secretary," and "chief financial officer"], and plaintiff's bylaws define officers and outline how they are selected. Plaintiff has failed to produce any evidence that anyone it contends was disparaged by defendant in violation of the nondisparagement clause were officers and directors at the time of the alleged disparagement.

Plaintiff contends because the separation agreement does not define "officers" or "directors," those terms can be reasonably interpreted under their dictionary definitions to include, for purposes of the challenged cause of actions, plaintiff's school principal, the dean for all of plaintiff's schools, and plaintiff's CEO. We disagree.

13

Although the first cause of action alleged defendant made disparaging statements about "[plaintiff] and its staff," the second cause of action merely alleged defendant made disparaging statements about plaintiff only. The second cause of action does not allege defendant made disparaging statements about plaintiff's staff, including the school principal, the dean for all of its schools, and the CEO. Because plaintiff did not seek, nor did the trial court authorize plaintiff, to amend the second cause of action to allege defendant made disparaging statements about plaintiff's staff (*Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858, 873, we need not consider whether plaintiff's school principal, the dean for all of plaintiff's schools, and plaintiff's CEO are officers or directors for purposes of the second cause of action.

Moreover, plaintiff's bylaws do not include as an officer or director plaintiff's school principal, its dean, or plaintiff's CEO.[8] The separation agreement does not prevent defendant from making negative statements about plaintiff, its teachers, or other non-officer/director employees.

We also reject plaintiff's contention that a disparaging statement about plaintiff is a statement regarding all of its officers and directors. Under plaintiff's interpretation, it

[8] Engelberg declared he was the CEO. However, this was insufficient to establish he was an "officer" covered by the nondisparagement clause of the separation agreement. The officers of a corporation are identified in the Corporations Code as (1) a board chairperson; (2) a secretary; (3) a chief financial officer; and (4) any other officer "stated in the bylaws or determined by the board . . . ." (Corp. Code, § 312, subd. (a).) "The president, or if there is no president[,] the chairperson of the board, . . . is the chief executive officer." (*Ibid.*) Thus, under the Corporations Code, the CEO is an officer if (a) he or she is acting as CEO by virtue of the fact that he or she is also the president or board chairperson, or (b) the bylaws or the board determines the CEO to be an officer.

Engelberg's declaration indicated he was the CEO after he finished his stint as board chairman; and, he did not declare he was president at the time defendant's statements were made. Thus, the only way he could have been an officer for purposes of this litigation was if the bylaws listed the CEO as an officer or there was board action that created the CEO position and determined the CEO was an officer within the meaning of the bylaws. As we have stated, the bylaws omitted any reference to the CEO as an officer of the corporation. In addition, we have no record of any action by the board regarding the creation of a CEO or the inclusion of a CEO as an officer. Plaintiff did not satisfy its burden of demonstrating Engelberg was an officer.

appears virtually any statement about plaintiff would constitute a statement regarding all of its officers and directors. In addition, plaintiff concedes the nondisparagement clause "was inadvertently changed" so as not to memorialize the actual agreement that "[defendant] would not disparage [plaintiff] and [plaintiff's] officers and directors would not disparage [defendant]." As the trial court stated, there is no evidence plaintiff reformed the separation agreement, and plaintiff "fail[ed] to show that the agreement can be interpreted to prohibit comments solely about Plaintiff."

Plaintiff also argues defendant breached the separation agreement because in violation of the confidentiality clause, defendant improperly used and disclosed plaintiff's confidential information. That clause prohibits defendant from disclosing or using plaintiff's information "which plaintiff has treated as confidential, propriety or trade secret . . . ." Plaintiff does not cite to any evidence in the record that immediately before defendant allegedly used or disclosed the information it contends was in violation of the separation agreement, plaintiff treated that information as confidential. Therefore, plaintiff's argument is forfeited. (*Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1161-1162; *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1215 ["Contentions are waived when a party fails to support them with reasoned argument and citations to authority"]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["When an appellant . . . . fails to support [a point] with reasoned argument and citations to authority, we treat the point as waived"].)

15

**DISPOSITION**

The order denying the motion to strike plaintiff's first two causes of action is reversed.  Defendant is awarded his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KUMAR, J.[*]


We concur:



KRIEGLER, Acting P. J.



BAKER, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.